# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3855

_____

United States of America

*Plaintiff - Appellee*

v.

Shawn Gant

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: June 13, 2013
Filed: July 18, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Shawn Patrick Gant on three counts of arson, in violation of 18 U.S.C. § 844(i). The district court[1] sentenced him to concurrent 240-month terms of imprisonment on each count, consecutive to an existing 10-year federal sentence.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

*See* ***United States v. Gant***, 663 F.3d 1023, 1025 (8th Cir. 2011). He appeals, attacking (1) the admission of prior-acts evidence, (2) the sufficiency of the evidence, and (3) the reasonableness of the sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

The indictment charged Gant with setting three fires. The first was in July 2009. He was living in the "computer room" of his girlfriend's sister's house. The sister hosted a pool party. Gant and his girlfriend attended. They drank heavily and bickered. Everyone was outside, around the pool. Around 7:30 p.m., Gant went inside. About 30 minutes later, he came out and asked, "Do you smell that?" No one smelled anything except a citronella candle. The sister and her boyfriend then went inside, finding the house on fire. Gant had been the last person in the house. He left, going to a coworker's home. There, Gant fluctuated between agitation and excitement. He returned to the fire, twice asking a firefighter about the cause. The fire marshal determined the fire started in the computer room and was not accidental, but the cause was "undetermined."

The second fire was at Gant's ex-girlfriend's house in October 2009. She and several children (including one of Gant's) were home when a fire erupted in the kitchen. Everyone escaped. That night, Gant told a friend that he "heard from a little birdie" about the fire. The next day, Gant told her "no one was supposed to be home and it wasn't supposed to happen that way." He also said that "[n]obody was supposed to get hurt," and that his ex-girlfriend deserved the fire "for breaking [his] heart." (In 2008, he had tried to break into her previous house.) An investigator determined the fire started near or in a toaster. The cause was "undetermined."

A year and a half later, Gant wrote a letter to the friend:

> They investigated a lot of fires that I wasn't involved with, taking attention away from the ones I was involved with . . . . I'm going to get away with a couple of incidents. They still haven't figured out the truth [about my ex-girlfriend's]. Anyone can sneak into a house and rewire outlets and appliances.

The third fire was in May 2010 at Gant's apartment, which was in a mall with businesses on the lower level. He always locked his apartment door and had the only key. His landlord had recently given an eviction notice for late rent. Gant was drinking at a bar one-and-a-half blocks from his apartment building. He left for his apartment between 9:45 and 10:00 p.m. Right before 10:00 p.m., the tenant across the hall heard someone open the front door to the building and enter Gant's apartment. That person quickly left Gant's apartment, locked the door, and exited the building. Gant returned to the nearby bar between 10:00 and 10:10 pm. Before 10:30 p.m., he went to another local bar. When asked why he looked upset, Gant – who was drunk – replied, "[My] apartment [is] on fire and [I have] an alibi."

Tenants of the building found Gant's apartment on fire. They gathered outside the building. Gant was not there. A firefighter suffered injuries searching for tenants – including Gant – in the burning building (which was destroyed). Investigators determined the fire started in a plastic bucket in Gant's apartment. They labeled the cause of the fire "undetermined," because they could not eliminate cigarette butts as an accidental cause.

Before trial, the government moved to admit evidence that Gant intentionally set numerous other fires (eventually focusing on 17 prior fires). Over his objection to exclude all prior-acts evidence, the district court limited evidence to four prior fires and several statements, including his admission to setting grass fires. The first prior fire was in 2001, when he set fire to his duplex apartment. The second, in June 2002,

he started near a coffee maker in the break room of his workplace. Questioned about these fires, he admitted to a third — burning his car in January 2002. He pled guilty to two counts of arson for the duplex and workplace fires. The fourth fire was in 2004, after his release from prison, when he set fire to his apartment. His roommate suffered inhalation and burn injuries. Gant pled guilty to reckless use of fire.

Evidence at trial included the prior-acts evidence, Gant's statements about setting fires, and his admission to starting fires when under stress or drinking excessively. Three former inmates testified he got "[k]ind of excited" when discussing the fires he started. One testified that Gant talked about setting a fire after drinking in a bar, and returning to the bar afterward. Another testified that Gant admitted to starting the May 2010 fire by placing a lit cigarette in braided toilet paper. Additional witnesses linked him to the three charged fires. The jury convicted on all three counts.

Gant's advisory range was 130 to 162 months. (The statutory maximum sentence was 80 years.) The district court departed upward to 240 months based on U.S.S.G. § 5K2.0(a)(3). Alternatively, the district court deemed the sentence a variance under 18 U.S.C. § 3553(a).

II.

Gant argues the district court erred under Federal Rule of Evidence 404(b) in admitting his convictions for four prior fires and his statements about setting other fires. "This court reviews for clear abuse of discretion a district court's evidentiary rulings." *United States v. Lindsey*, 702 F.3d 1092, 1097 (8th Cir. 2013). This court reverses "only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." *United States v. Farish*, 535 F.3d 815, 819 (8th Cir. 2008).

"Prior-acts evidence 'may be admissible for another purpose [other than propensity], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" ***United States v. Tyerman***, 701 F.3d 552, 562 (8th Cir. 2012) (alteration in original), *quoting* **Fed. R. Evid. 404(b)(2)**. "To be admissible under 404(b), evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." ***Id.*** (Gant does not challenge the district court's finding that sufficient evidence supports the prior acts.)

Here, the evidence shows (at least) intent and lack of accident. Under the first factor, Gant claims that his prior acts of arson, and admissions to them, are irrelevant to proving the charged fires were arson. Not so. "Relevance of evidence is established by any showing, however slight, that the evidence makes it more or less likely that the defendant committed the crime in question." ***United States v. Mora***, 81 F.3d 781, 783 (8th Cir. 1996). Evidence that he twice set fire to his own residence, burned his own car, started a fire near an appliance at his workplace, and admitted to starting fires helps show that he intended to start the charged fires, and they were no accident. *See* ***Westfield Ins. Co. v. Harris***, 134 F.3d 608, 614-15 (4th Cir. 1998) ("[W]here prior acts of apparent coincidence are similar, the repeated reoccurrence of such an act takes on increasing relevance to support the proposition that there is an absence of accident." (citation omitted)); *cf.* ***United States v. Cook***, 454 F.3d 938, 941 (8th Cir. 2006) (explaining this court has "frequently upheld the admission of prior drug convictions" to show intent when a defendant denies committing a drug offense); ***United States v. Hermes***, 847 F.2d 493, 497 (8th Cir. 1988) (holding admission to prior arson scheme relevant to show intent to commit the charged arson).

Under the second factor, Gant does not contest that the prior acts are similar to the present arson offenses, but believes they are too remote. The oldest was in

2001 — not too remote for 404(b) evidence. *See* **United States v. Yielding**, 657 F.3d 688, 702 (8th Cir. 2011) ("This court has upheld the introduction under Rule 404(b) of fifteen-year-old convictions that were similar to the crime charged.").

Under the fourth factor, Gant contends the evidence is more prejudicial than probative. *See* **Fed. R. Evid. 404(b)(2)**; *see also* **Fed. R. Evid. 403**. "Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial." **Tyerman**, 701 F.3d at 563, *citing* **Fed. R. Evid. 403**. The district court found that admitting all the prior-acts evidence the government requested would have been "highly prejudicial." It therefore restricted evidence to four prior acts and several statements. The court determined this restriction adequately limited any prejudice. "This court gives great deference to the district court's weighing of the probative value of evidence against its prejudicial effect." *Id.*

Gant further contends that the government used the evidence in closing argument purely to show his propensity to commit arson. The government argued:

> [W]hen you are looking at whether these were intentionally set or were accidental, you can consider the defendant's prior convictions. The prior convictions were, he was convicted of arson twice in Decorah.
>
> You can consider his admissions that he set the fire on January 24, 2004, in Oelwein. You can consider those intentionally set fires in looking at whether these were accidental. What are the odds the defendant intentionally sets four other fires?
>
> . . .
>
> Again, when you are looking at whether the defendant intentionally did these or whether these are accidental, you can look at his past history, and you consider if he intentionally set those. And he

admitted he intentionally set those. Then what are the odds that these are all accidental?

Your commonsense tells you the defendant committed all these.

These remarks attempted to show – and were relevant to whether – the charged fires were not accidental. The remarks were not improper. *Cf.* ***United States v. Brown***, 702 F.3d 1060, 1065 (8th Cir. 2013) ("[I]t [was] not . . . improper [in closing argument] for the Government to suggest that [the defendant's] prior [offenses] shed light on his *modus operandi* [in the charged offense]." (citation omitted)). The district court did not abuse its discretion by admitting the prior-acts evidence.

III.

Gant contests the sufficiency of the evidence. "This court reviews de novo the district court's denial of a motion for acquittal based on insufficiency of the evidence." ***Tyerman***, 701 F.3d at 564. "On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt." ***United States v. Aldridge***, 664 F.3d 705, 715 (8th Cir. 2011); *see* ***United States v. Pizano***, 421 F.3d 707, 719 (8th Cir. 2005) ("The standard for reviewing a claim of insufficient evidence is strict, and a jury's guilty verdict should not be overturned lightly.").

Gant asserts that "the evidence in its totality did not rise above conjecture or speculation." *See* ***United States v. Diggs***, 527 F.2d 509, 513 (8th Cir. 1975) ("[A] jury is not justified in convicting a defendant on the basis of mere suspicion, speculation or conjecture."). To the contrary, the evidence showed he was at or near the July 2009 and May 2010 fires before they erupted. Relevant to the October 2009 fire, a witness testified to Gant's animosity toward his ex-girlfriend. The jury heard his admission to starting fires when under stress or drinking excessively. Several

-7-

witnesses testified to Gant admitting to, or implicating himself in, setting the charged fires. He attacks the witnesses' credibility. This court does "not weigh the evidence or assess the credibility of the witnesses. The jury has the responsibility of resolving conflicts or contradictions in testimony, and [this court] resolve[s] any credibility issues in favor of the verdict." *United States v. Johnson*, 688 F.3d 494, 502 (8th Cir. 2012). The totality of the evidence supports the verdict. *See **United States v. Davis***, 534 F.3d 903, 911-912 (8th Cir. 2008) (affirming the conviction over an insufficiency claim where evidence included the defendant's animosity toward a victim, his close proximity to the fire, providing false information to the police, and making incriminating statements).

IV.

According to Gant, the district court abused its discretion at sentencing by departing – or varying – upward. This court reviews the reasonableness of a sentence "whether inside or outside the Guidelines range" for abuse of discretion. ***United States v. Feemster***, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "In reviewing a defendant's sentence, [this court] first ensure[s] that the district court did not commit significant procedural error; then, absent significant procedural error, [this court] review[s] the sentence for substantive reasonableness." ***United States v. Richart***, 662 F.3d 1037, 1045 (8th Cir. 2011). Gant asserts no procedural error. On substantive review, a district court abuses its discretion when it "fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but [in weighing those factors] commits a clear error of judgment." *Id.* at 1051.

The district court sentenced Gant to 240 months. It departed upward 78 months under U.S.S.G. § 5K2.0(a)(3) — circumstances inadequately considered. Under that section, a court may depart upward "if the court determines that [the circumstance that forms the basis for the departure] is present in the offense to a

degree substantially in excess of . . . that which ordinarily is involved in that kind of offense." **U.S.S.G. § 5K2.0(a)(3)**; *see* **United States v. Hawkman**, 438 F.3d 879, 882-83 (8th Cir. 2006) (upholding an upward departure under § 5K2.0(a)(3) where there was a "discrepancy between the [victim's] injuries . . . and those in a typical case of assault with a dangerous weapon").

Gant believes that the sentence "over-punished" him. The court found the advisory range does not reflect the serious impact of the fires on the victims, including property loss, emotional distress, and substantial risk of injury or death. Specifically, it noted that Gant knew "all of the structures were occupied" when he set the fires. Children (including one of his own) were in the house during the October 2009 fire. The May 2010 fire endangered the lives, and destroyed the property, of all the building's tenants. The district court did not abuse its discretion in departing under § 5K2.0(a)(3).

Alternatively, the court considered the sentence an upward variance under § 3553(a). Gant claims the sentence is unreasonable because it is consecutive to an existing 10-year federal sentence, and the district court insufficiently addressed his mental health. The court determined his danger to society and recidivism risk merited a consecutive sentence. This determination was not unreasonable. *See* **United States v. Lee**, 545 F.3d 678, 681 (8th Cir. 2008) (per curiam) (upholding a consecutive sentence where the district court "determined that [the defendant's] offenses were 'serious[,]' and [the court] explained the nature of [his] conduct"). The district court noted his mental health issues, and within its discretion, weighed other factors more heavily. **United States v. Ford**, 705 F.3d 387, 389 (8th Cir. 2013); *accord* **Gant**, 663 F.3d at 1032 ("A district court does not impose a substantively unreasonable sentence merely because the district court attributes less weight to a defendant's personal problems."). The court found the guidelines fail to account for Gant being a "serial arsonist." It noted that he is "extremely dangerous to the community," and retaliates against "those who upset him." Moreover, the court explained, his criminal history

has myriad unscored criminal conduct.  Because the district court adequately considered the sentencing factors under § 3553(a), the sentence was a reasonable upward variance.  *See* **Gant**, 663 F.3d at 1032 (upholding a variance where "review of the record show[ed] that the district court considered Gant's nature and history, the seriousness of the offense, his criminal history, the danger and threat he posed to the public, and the need for punishment and deterrence.").

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____